UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RBC BANK (USA), ) | Civil Action No.: 4:11-cv-0124-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| THOMAS DARIN EPPS, et al; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.   INTRODUCTION

Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. § 39-5-10 et seq. Presently before the Court is Defendant David L. Bridges, Jr.'s Motion to Dismiss (Document # 45). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC.

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges that in 2008 it extended loans to 24 borrowers, each of whom ostensibly sought either to acquire or to refinance residential property located in the Myrtle Beach area. In reality, the borrowers were either participants in an elaborate mortgage fraud scheme or "straw buyers" recruited to participate in such a scheme. Plaintiff alleges that each of the Defendants participated in the scheme in one or more of several ways. For example, some Defendants participated by ensuring the Enterprise's[1] ability to profit from the scheme. Plaintiff alleges that the sellers, including those Defendants labeled "Developer Defendants," either shared a portion of the

---

[1] The Complaint identifies the "Enterprise" as "the organization and the individuals who associated with it for criminal purposes." Complaint ¶ 50.

sale proceeds with their co-conspirators after closing or authorized disbursements at closing directly to corporations controlled by participants in the scheme. The Complaint identifies Bridges as one of the "Developer Defendants." Complaint ¶ 37. Plaintiff alleges,

> The Developer Defendants . . . participated in the Enterprise by knowingly participating in the sale of properties to straw buyers for substantially more than the fair market value of the properties. The Developer Defendants either received the fraudulently obtained funds directly at closing and then distributed portions of the stolen funds as kickbacks to other members of the Enterprise . . . or allowed huge sums to be siphoned off directly at closing to other members of the Enterprise . . .

Complaint ¶ 53(p). The Complaint specifically mentions Bridges in three paragraphs:

> 37. Defendant DAVID L. BRIDGES, JR., is a citizen and resident of South Carolina whose last known address is 418 Cabo Loop, Myrtle Beach, South Carolina 29577. Defendant DAVID BRIDGES is the owner of and conducts business as BRIDGES CUSTOM HOMES, LLC, a South Carolina limited liability company.
> ....
> 93. On or about August 19, 2008, individuals named William and Susan Collum sold 987 Shipmaster Ave. in Myrtle Beach, South Carolina to a straw buyer from Colorado named Zhorzhik Barakozian for $749,000. The property was listed for sale in the MLS several times between January 2007 and May 2008 at various prices between a low of $420,000 and a high of $529,000. The Collums, nominally the sellers of this property, for the sellers by Defendant DAVID BRIDGES, the developer who built 987 Shipmaster and who convinced the Collums to purchase the property initially. BRIDGES is related to the Collums by marriage. The deed from the Collums to straw buyer Barakozian was signed by BRIDGES as attorney-in-fact for the Collums.
>
> 94. JOSEPH GRAY, EASON and others, working with BARFIELD and other co-conspirators, obtained an inflated appraisal that overvalued the property by almost $350,000. The closing was conducted by Hedesh. MCCAFFREY and BELLE TERRE performed the title work and prepared the HUD-I. Upon information and belief, Hedesh, MCCAFFREY and BELLE TERRE allowed this loan to close without obtaining from Zhorzhik Barakozian the required $75,357 payment the HUD-1 showed Barakozian making. This required buyers' payment was either not made at all, was made by one of the co-conspirators, or was made by one of the coconspirators after closing from the loan proceeds. Defendant BRIDGES permitted over $300,000 of the seller's proceeds to be paid as a kickback directly from the closing to Defendants MCCAFFREY and EASON, in the form of a $311,020 payment to PRODIGY, even though neither MCCAFFREY, EASON nor PRODIGY had performed any legitimate services that would have entitled them to these payments. Upon information and belief, MCCAFFREY and/or EASON then

>   distributed these stolen funds to other members of the Enterprise. EASON paid a kickback of $6,000 to BARFIELD on or about September 11, 2008 by way of a check drawn on JJE ENTERPRISES' bank account. As a direct result of the fraudulent activities of the Enterprise, RBC loaned straw buyer Barakozian $674,000 to purchase this property. RBC received ten (10) payments on this loan from at least five (5) different bank accounts in the names of Sandro Karmryan (4), Aleksandr Boychuk DBA Alex Trucking (2), Aleksandr Boychuk (1) and Barakozian (4). Several of these accounts, including the one in the name of Karmryan, were used to make payments on the Boychuk loan (see paragraph 79, above) as well. The loan then went into default. RBC has suffered an estimated loss on this transaction of $408,324.

Complaint ¶¶ 37, 93-94. Plaintiff alleges causes of action against all Defendants for violation of 18 U.S.C. § 1962(c) (Racketeering), violation of 18 U.S.C. § 1962(d) (conspiracy to commit racketeering activity), and violation of the SCUTPA.

### III.    STANDARD OF REVIEW

#### A.    Rule 12(b)(6) and Pleading Requirements Under Rule 8

A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U .S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

>   [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

-3-

> do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

### B.     Heightened Pleading Requirements Under Rule 9(b)

Allegations of fraud pleaded as the basis of a RICO claim must meet the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989) (citing Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1400–01 (9th Cir.1986) ("plaintiff must plead 'circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed.R.Civ.P. 9(b)'")). Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n. 5 (4th Cir.1999).

The heightened pleading standard in Rule 9(b) requires plaintiffs to plead with particularity "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 (2d ed.1990)). Thus, plaintiffs must demonstrate "the 'who, what, when, where, and how' of the alleged fraud." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir.2008) (quoting U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 384 (5th Cir.2003)).

## IV.  DISCUSSION

Count one of the Complaint arises under 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The elements of a claim for the violation of the provisions of civil RICO are: 1) conduct or predicate acts, 2) of an enterprise, 3) through a pattern, 4) of racketeering activity. Sedima, S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

Bridges first argues that Plaintiff has failed to allege facts sufficient to show he is part of a RICO enterprise. RICO imposes liability only on those who "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  In Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court adopted the "operation or management" test to determine whether a defendant is part of an enterprise.  "Reves resolved the question of how much control of the enterprise's activity is necessary, holding that 'one must have some part in directing' the affairs of the enterprise." Thomas v. Ross & Hardies, 9 F.Supp.2d 547, 554 (D.Md. 1998) (citing Reves, 507 U.S. at 179).  The Reves Court clarified that "liability is not limited to those with primary responsibility for the enterprise's affairs" or "to those with a formal position in the enterprise." Reves, 507 U.S. at 179.  Nevertheless, "mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." Thomas, 9 F.Supp.2d at 554.

Defendant also argues that Plaintiff's allegations are insufficient to show that Bridges engaged in a pattern of racketeering activity.  There are no "mechanical rules" to determine whether a pattern of racketeering has been shown, but that it is "to be decided on a case-by-case basis."

-5-

Parcoil Corp. v. NOWSCO Well Service, Ltd., 887 F.2d 502, 504 (4th Cir. 1989).

As alleged by Plaintiff, Bridges developed a property, 987 Shipmaster Avenue, convinced family members to purchase the property, and when the family members sold the property to a straw buyer, Bridges signed the deed as attorney-in-fact for the family members. Bridges then permitted over $300,000 of the family members' proceeds to be paid as a kickback directly from the closing to other Defendants.

Although Plaintiff's allegations against Bridges are not as strong as those against many of the other Defendants, taking all reasonable inferences from facts alleged in the Complaint, Plaintiff has provided sufficient factual information to allege a RICO cause of action against Bridges. Bridges' arguments are better addressed under Rule 56, Fed.R.Civ.P., once discovery is complete. Thus, dismissal of the RICO cause of action against Bridges at this stage of the litigation would be premature.

Bridges also argues that, because Plaintiff has failed to allege a substantive RICO claim against him, dismissal of Plaintiff's RICO conspiracy claim is proper. However, as discussed above, Plaintiff dismissal of the RICO claim against Bridges is not appropriate. Bridges also argues that, under United States v. Pryba, 900 F.2d 748, 760 (4th Cir. 1990), Plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering." However, the Supreme Court has rejected that approach. In Salinas v. U.S., 522 U.S. 52, 118 S.Ct. 469 (1997), the Supreme Court resolved a conflict among the circuits regarding whether, under the RICO conspiracy provision, the defendant must himself commit or agree to commit two or more predicate acts. The Court held that he did not:

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's

completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

Salinas, 522 U.S. at 65.  All that is required for conviction is that the Defendant knew about the racketeering activity and "agreed to facilitate the scheme." Id. at 66.  Here, Plaintiff alleges that Bridges knowingly participated in the sale of property to a straw buyer at an inflated price and directed the payment of kickbacks.  These facts are sufficient to allege that Bridges participated in a conspiracy under § 1962(d).  Thus, dismissal is not appropriate on the conspiracy claim.

Bridges also argues that Plaintiff fails to state a claim against him under the SCUTPA.  To establish a claim under the SCUTPA, the plaintiff must prove: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." Wright v. Craft, 372 S.C. 1, 640 S.E.2d 486, 498 (S.C.Ct.App.2006) (citing S.C.Code Ann. §§ 39–5–10 to –560).

Plaintiff does not allege it its Complaint that the act of Bridges or the acts of any other Defendant affected the public interest, although it does allege generally that the acts of Defendants are capable of repetition.  Complaint ¶ 112.  An impact on the public interest may be shown if the acts or practices have the potential for repetition. Crary v. Djebelli, 329 S.C. 385, 496 S.E.2d 21, 23 (S.C.1998).  "The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." Wright, 372 S.C. at 30, 640 S.E.2d at 502 (citing Singleton v. Stokes Motors, Inc., 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004); Daisy Outdoor Adver. Co. v. Abbott, 322 S.C. 489, 496, 473 S.E.2d 47, 51 (1996)). Other than it's bare allegation that the acts of Defendants are capable of repetition, Plaintiff has not alleged facts sufficient to show that Bridges has engaged in

-7-

the same kind of actions in the past or that he engaged in procedures that create the potential for repetition. A formulaic recitation of the elements of a cause of action are insufficient to withstand a motion to dismiss under Rule 12(b)(6). Twombly, 550 U.S. at 555. The Complaint must contain sufficient factual matter to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. Plaintiff's Complaint does not contain facts sufficient to show that the actions of Bridges were capable of repetition.

Plaintiff argues that it is not necessary to show potential for repetition to show an impact on the public interest. While this is true, see, e.g., Wright, 371 S.C. at 30, 640 S.E.2d at 502, Plaintiff fails to allege anything regarding an impact on the public interest other than that the acts of Defendants are capable of repetition. Plaintiff argues in its Response the ways in which Defendants' (not necessarily Bridges') actions impact the public interest, but the facts upon which Plaintiff bases these arguments are not contained within the Complaint. Thus, Plaintiff fails to sufficiently allege a SCUTPA claim against Bridges and dismissal is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Bridges' Motion to Dismiss (Document # 45) be granted as to count three of Plaintiff's Complaint and denied as to counts one and two of Plaintiff's Complaint.

 s/Thomas E. Rogers, III  
 Thomas E. Rogers, III  
 United States Magistrate Judge

February 3, 2012  
Florence, South Carolina

**The parties are directed to the important information on the following page.**

-8-