UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RBC BANK (USA), | ) | Civil Action No.: 4:11-cv-0124-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| | ) | |
| THOMAS DARIN EPPS, et al; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

Presently before the Court are Defendant Robert Hedesh, Esq.'s Motion to Quash (Document # 92) and Plaintiff's Motion to Compel (Document # 101). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC.

**II.    MOTION TO QUASH**

Defendant Robert Hedesh, Esq. (Hedesh) seeks an order quashing a subpoena issued by Plaintiff to Horry County State Bank that requests production of all banking records of Hedesh or his law practice, Robert A. Hedesh, Esq., for the year 2008.

This case involves alleged RICO violations. Plaintiff asserts that in 2008, it extended loans to 24 borrowers, each of whom ostensibly sought either to acquire or to refinance residential property located in the Myrtle Beach area. Plaintiff alleges that, in reality, the borrowers were either participants in an elaborate mortgage fraud scheme or "straw buyers" recruited to participate in such a scheme.

Plaintiff alleges in its Complaint that Hedesh "was the principal escrow agent, settlement

agent and closing attorney" used in the transactions. Complaint ¶ 53(m). Hedesh has elsewhere testified that, during the time of these transactions, he maintained three trust accounts. Deposition of Robert A. Hedesh, taken Sept. 11, 2009, in Robert A. Hedesh, Esq., LLC v. Seidel, No. 2009-CP-26-3278 (Hedesh 2009 Dep.), pp. 36-37 (attached as Exhibit A to Plaintiff's Response). Two of those accounts, maintained at another bank, were for transactions not involving Malia McCaffrey, a central figure in the scheme. The third trust account, at Horry County State Bank, was used exclusively for McCaffrey's transactions. Hedesh 2009 Dep. p. 37. As alleged in the Complaint, McCaffrey, a Title Agent, assisted the Enterprise by preparing fraudulent HUD-1s, accepting borrower contributions from third-parties, and distributing proceeds to co-conspirators through various dummy corporations. She had sole custody of the checkbook for the Horry County State Bank trust account, which was used for all of the transactions in which she was involved. Hedesh 2009 Dep. p. 103. The checks were located in McCaffrey's office, which at the time of these transactions was located several blocks away from Hedesh's office. Hedesh 2009 Dep. pp. 66-67. Hedesh did not have a key to either McCaffrey's office or to the credenza in which the checks were located. Hedesh Dep. pp. 119; 121-122.

      When a new client came in for closing, McCaffrey created the file and continued to retain it, even after the matter closed. Deposition of Robert A. Hedesh, taken July 7, 2010, in First Reliance Bank v. Wolf, No. CP-09-21-973 (Hedesh 2010 Dep.), pp. 9-10; 12-13 (attached as Exhibit B to Plaintiff's Response). She would perform the title search. Hedesh 2010 Dep. pp. 6-7. She would then receive the loan package from the bank, including the lender closing documents. Hedesh 2010 Dep, pp. 5, 100. If Hedesh was called upon to prepare a deed, it was McCaffrey who actually prepared it. Hedesh 2009 Dep. p. 99. McCaffrey would prepare the HUD-1, produce the

disbursement checks, and set up the date and time for the closing. Hedesh 2010 Dep. pp. 5, 25; Hedesh 2009 Dep. p. 101. Hedesh also allowed McCaffrey to reconcile the IOLTA account, asking only, "did it balance?" Hedesh 2009 Dep. pp. 34-35.

Hedesh argues that the subpoena is overly broad because the information sought by Plaintiff in the subpoena will include loan closing transactions for clients who have no connection to this action. Plaintiff argues that such a result is unavoidable and one purpose for the requested discovery is to discover the existence and extent of third party involvement in the RICO scheme and limiting the subpoena to include transactions involving only those parties about which Plaintiff already knows would defeat this purpose. Further, Plaintiff argues, the bank has no way to determine which deposits and which checks are for which transactions.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). "Determining whether a subpoena is overly broad 'cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.'" Packwood v. Senate Select Committee on Ethics, 510 U.S. 1319, 114 S.Ct. 1036, 1037 (1994) (citing Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494, 505-506, 90 L.Ed. 614 (1946)). Based upon the facts presented, the subpoena as written is not overly broad as it is limited to (1) the bank account over which the evidence indicates McCaffrey[1] had significant control and (2) the year

---

[1] Hedesh has elsewhere acknowledged that McCaffrey was "involved in some wrongdoing with respect to mortgage transactions." (RBC Bank v. Hedesh et. al., 5:11-CV-19 (E.D.N.C.), Doc. No. 16, ¶ 13).

2008, the year in which Plaintiff alleges it suffered as a result of the alleged scheme.

Hedesh also argues that the subpoena seeks privileged information, citing to Rule 1.6 of the South Carolina Rules of Professional Conduct, Rule 407, SCACR, and two South Carolina Ethics Advisory Opinions. Ruel 1.6(a) provides, "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)."

The attorney-client privilege is to be narrowly construed. Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). Other than the Ethics Advisory Opinions[2], which he acknowledges are not binding law, Hedesh fails to point to any authority that an attorney's bank records are protected by the attorney-client privilege. Rather, courts that have considered the issue have rejected such an argument. For example, in SEC v. First Security Bank of Utah, 447 F.2d 166 (10th Cir. 1971), the 10th Circuit rejected the intervenors-attorneys' argument that a subpoena requiring production of their bank records violated the attorney-client privilege. As the court noted,

> [t]he deposit and disbursement of money in a commercial checking account are not confidential communications. The records are the property of the bank and are made by it for its business purposes. . . . The maintenance of checking accounts is not shown to have any relevance to any communications made in confidence between a lawyer and client for the purpose of obtaining legal advice. A client may not

---

[2]The Ethics Advisory Committee notes in one of the Opinions submitted by Hedesh that "[a]lthough some information may be both privileged and ethically protected, much information that is ethically protected may not be privileged. Courts and other bodies with subpoena power can require its revelation. . . . The Committee advances no opinion on the issue of whether such information is "privilege" [sic] under applicable rules of evidence, or the corresponding issue of whether a court of competent jurisdiction could order its disclosure." Ethics Advisory Opinion 90-14.

immunize his business transactions from discovery by the device of a lawyer's commercial checking account.

SEC, 447 F.2d at 167. See also Reiserer v. United States, 479 F.3d 1160, 1165 (9th Cir. 2007) ("there is no confidentiality where a third party such as a bank either receives or generates the documents sought"); In re Grand Jury Subpoena, 831 F.2d 225, 227-228 (11th Cir. 1987) ("An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged."); Harris v. United States, 413 F.2d 316, 319-20 (9th Cir. 1969) ("[T]he client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers. The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confidential communication, as is the consultation between attorney and client."); O'Donnell v. Sullivan, 364 F.2d 43, 44 (1st Cir. 1966) (finding that bank records are not confidential communications to an attorney by a client). Because Horry County State Bank's records do not involve confidential communications between Hedesh and his clients, the records are not protected by the attorney-client privilege.[3]

Accordingly, Hedesh's Motion to Quash (Document # 92) is denied.

### III. MOTION TO COMPEL

Plaintiff seeks an order compelling Defendants Alvin H. Shuman, McKean Properties, LLC,

---

[3] Defendant asserts globally the attorney-client privilege over this bank account. However, no privilege log has been submitted. Thus, to the extent a particular transaction or document would be protected, it is not before the Court.

and David O'Connell[4] (these Defendants) to respond to Plaintiff's Interrogatories and Requests for Production of Documents (discovery requests). On April 29, 2011, Plaintiff served its discovery requests on these Defendants. Responses to the discovery requests were due June 1, 2011. These Defendants failed to serve their responses by the deadline. Plaintiff sent a letter to these Defendants granting an extension of the deadline through June 20, 2011. These Defendants failed to serve their responses by the extended deadline. As a result, Plaintiff filed the present Motion to Compel. These Defendants have not filed a Response to the Motion to Compel. Accordingly, Plaintiff's Motion to Compel is granted. Defendants Alvin H. Shuman, McKean Properties, LLC, and David O'Connell shall serve their responses to Plaintiff's discovery requests within ten days of the date of this Order.

## IV.   CONCLUSION

For the reasons discussed above, Hedesh's Motion to Quash (Document # 92) is **DENIED** and Plaintiff's Motion to Compel (Document # 101) is **GRANTED**. Defendants Alvin H. Shuman, McKean Properties, LLC, and David O'Connell shall serve their responses to Plaintiff's discovery requests within ten days of the date of this Order.

**IT IS SO ORDERED.**

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 13, 2012
Florence, South Carolina

---

[4] Plaintiff also included Defendants John M. Warner, Jr. and Warfin Developers, LLC in its Motion to Compel, but subsequently withdrew its Motion as to these two Defendants after it received their discovery responses.